

U.S. Department of Justice

United States Attorney
Eastern District of New York

EDP:TBM
F. #2020R00998

271 Cadman Plaza East
Brooklyn, New York 11201

February 28, 2024

By ECF

The Honorable William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Gianni Stewart
                  Criminal Docket No. 21-411 (WFK)

Dear Judge Kuntz:

      The government respectfully submits this letter in advance of the defendant Gianni Stewart's sentencing, scheduled for March 6, 2024, at 11:30 a.m. For the reasons stated below, the government respectfully submits that a sentence within the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 41 to 51 months' imprisonment is sufficient, but not greater than necessary, here.

      I.    Background

      Between approximately June 2020 and April 2021, the defendant together with numerous co-conspirators defrauded the New York State Department of Labor ("NYSDOL") out of more than $1,750,000 in unemployment benefits, which benefits they unlawfully claimed in the names of approximately 250 victims. Presentence Investigation Report dated July 17, 2023 ("PSR") ¶ 19.

      In March 2020, following the onset of the COVID-19 pandemic and the consequent financial hardship facing American citizens, the President of the United States signed into law various acts that relaxed the requirements for claiming unemployment benefits and made significant additional funding available for such benefits.[1] See id. ¶¶ 7-14. To apply for unemployment benefits with NYSDOL, applicants were required to furnish their name, date of

---

[1] For example, in August 2020, the President of the United States authorized the Federal Emergency Management Agency to use disaster relief funds pursuant to Section 408 of the Stafford Act to provide supplemental unemployment benefits. PSR ¶ 13.

birth and Social Security number, all of which was verified by NYSDOL before claims were paid.  See id. ¶ 18.

The defendant and his co-conspirators used cryptocurrency to purchase the personally identifiable information ("PII") of victims through end-to-end encrypted applications like Telegram and then used the PII to make fraudulent claims for unemployment benefits from NYSDOL.  See id. ¶¶ 20-21, 33.  The fraudulent claims were then deposited into bank accounts they controlled or provided on reloadable KeyBank debit cards, which were mailed to addresses they controlled.  Id. ¶ 22.

The defendant and co-defendants Bryan Abraham, Carlos Vazquez, Angel Cabrera and Seth Golding had conversations on Telegram discussing the fraudulent scheme, including where they could obtain victim PII, which they referred to as "pros" or "profiles," the logistics of withdrawing fraudulent funds from KeyBank debit cards, and the luxury items and trips they were purchasing with their ill-gotten gains.[2]  Id. ¶ 23, 25-26.  Once in possession of the KeyBank debit cards, the defendant and his co-defendants traveled together to banks to make cash withdrawals.  Id. ¶ 23.

The defendant and his co-conspirators collaborated closely.  For example, on September 7, 2020, the defendant, Golding and another co-conspirator withdrew funds from multiple KeyBank debit cards at a bank in Brooklyn.  Id. ¶ 23(e).  When one was finished at the ATM, he would exit, only to be replaced moments later by the next.  Id.  In total, they withdrew almost $9,000.  Id.  Similarly, the defendant and his co-conspirators shared KeyBank debit cards.  Id. ¶ 24.  For instance, a KeyBank debit card in a victim's name was mailed to Stewart's home address, only to be later recovered from Abraham's person during an August 28, 2020 arrest.  Id.

In total, the defendant personally submitted and caused to be submitted fraudulent claims in the names of at least 23 victims, from which he and his co-conspirators received approximately $178,800.  Id. ¶ 31.  In the same time period, the defendant posted photographs to social media, depicting himself wearing designer clothing, alongside sports cars, and fanning out large sums of cash.  See id. ¶ 25.  For example, the below photographs, posted to social media accounts belonging to the defendant or co-conspirators, first depict the defendant alone; next depict the defendant in the upper right corner, wearing the same outfit, with co-defendant Golding in the bottom left corner, and two co-conspirators; and finally depict the defendant standing next to a car with the caption, "First V," which is slang for Infiniti.

---

[2]      The defendant and his co-conspirators coordinated on other fraudulent schemes over Telegram.  For example, Stewart sent Cabrera PII for third-party victims in Georgia, California and North Carolina, and Cabrera in turn shared a link to make unemployment claims in Ohio.  Id. ¶ 38.  Likewise, in May 2021, in a group chat involving the defendant, Abraham, Vazquez, Cabrera and Golding, Golding asked how long "Womply"—a Paycheck Protection Program or "PPP" provider—took to approve and where he could obtain bank statements, referring to third party bank statements.  Vazquez advised that Womply took one week to approve and that Vazquez had forged the requisite bank statements.  Id. ¶ 37.




On May 18, 2021, the defendant was arrested on a complaint charging him with conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2). See ECF No. 1. He was arraigned and released on bond. See ECF No. 23. On August 5, 2021, he was indicted for conspiracy to commit access device fraud in violation of 18 U.S.C. § 1092(b)(2), access device fraud in violation of 18 U.S.C. § 1029(a)(5), and aggravated identity theft in violation of 18 U.S.C. § 1028A. See ECF No. 70. He was arraigned and continued on bond.

The defendant has repeatedly violated the conditions of his pretrial release. He traveled out of state on numerous occasions and tested positive for marijuana. See PSR ¶ 5. Additionally, on July 4, 2024, the defendant and three unrelated co-conspirators were arrested in a car in which two firearms were recovered. Id. ¶ 67. For that conduct, the defendant faces state charges in Kings County Criminal Court, including for Criminal Possession of a Weapon in the Second Degree. Id. In connection with that case, the defendant posted bond. Id.

After a violation hearing before the Court on August 2, 2024, the defendant was remanded to the Metropolitan Detention Center in Brooklyn. See ECF No. 193. On October 12, 2023, he was again released on bond and remains on pretrial release. See ECF No. 205.

II. Guidelines Calculation

The defendant's Guidelines calculations is as follows:

| | | |
|---|---|---|
| Base Offense Level (§ 2B1.1(a)(2)) | | 6 |
| Plus: | Actual loss of more than $1,500,000 (§§ 2B1.1(b)(1)(I)) | +16 |
| Plus: | Involved 10 or more victims (§ 2B1.1(b)(2)(A)(i)) | +2 |
| Plus: | Unauthorized use or transfer of identification (§ 2B1.1(b)(11)) | +2 |
| Plus: | Involved conduct described in 18 U.S.C. § 1040 (§ 2B1.1(b)(12)) | +2 |
| Less: | Global resolution (§ 5K2.0) | -1 |
| Less: | Acceptance of responsibility (§§ 3E1.1(a), 3E1.1(b)) | -3 |
| Less: | Zero-point offender (§ 4C1.1(a)) | <u>-2</u> |
| Total: | | <u>22</u> |

4

PSR ¶¶ 50-62, 105.  The defendant has zero criminal history points and accordingly falls within Criminal History Category I.  Id. ¶¶ 63-65.

The government's calculation of the Guidelines differs from that in the PSR by the inclusion of the zero-point offender reduction.  Since the filing of the PSR, the Guidelines have been amended to provide for a two-level reduction in offense level where the defendant has no criminal history category points and otherwise satisfies various requirements, including that he "did not personally cause substantial financial hardship."  U.S.S.G. § 4C1.1(a)(6). "Substantial financial hardship" includes insolvency; filing for bankruptcy; suffering loss of a retirement, education or savings fund; making substantial changes to employment, such as postponing retirement; making substantial changes to living arrangements, such as relocating to a less expensive home; and suffering harm to the ability to obtain credit.  See U.S.S.G. § 4C1.1(b)(3); U.S.S.G. § 2B1.1, cmt., n.4(F).  Because the defendant has zero criminal history points, did not cause "substantial financial hardship" as defined by the Guidelines, and satisfies the remaining requirements under the amendment, he is eligible for the two-level reduction.

Accordingly, the defendant's total adjusted offense level is 22, which carries a Guidelines sentence of 41 to 51 months', assuming the defendant is in Criminal History Category I.

### III.  Sentencing Law

The standards governing sentencing are well-established.  In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court rendered the Guidelines advisory, and emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.  Id. at 264; see also United States v. Kimbrough, 552 U.S. 85 (2007).

Although the Guidelines are no longer mandatory, they continue to play a critical role in trying to achieve the "basic aim" that Congress sought to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways."  Booker, 543 U.S. at 252; see also United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that Booker/Fanfan and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge.").  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007).  The Guidelines range is thus "the lodestar" that "anchor[s]" the district court's discretion.  Molina-Martinez v. United States, 136 S. Ct. 1338, 1345–46 (2016) (internal quotation marks omitted).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in 18 U.S.C. § 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: "a) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for that offense; b) the need to afford adequate deterrence to criminal conduct; c) the need to protect the

public from further crimes by the defendant; and d) the need for rehabilitation." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) further directs the Court, "in determining the particular sentence to impose," to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Guidelines; (5) the Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

In light of Booker, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. See Crosby, 397 F.3d at 103. First, the Court must determine the applicable Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." Id. at 112; see also United States v. Corsey, 723 F.3d 366, 375 (2d Cir. 2013) ("Even in cases where courts depart or impose a non-Guidelines sentence, the Guidelines range sets an important benchmark against which to measure an appropriate sentence."). Second, the Court must consider whether a departure from that Guidelines range is appropriate. See Crosby, 397 F.3d at 112. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. Id. at 113.

IV.     Analysis

The government respectfully submits that a sentence of 41 to 51 months' imprisonment is warranted by the Section 3553(a) factors and will achieve the goals of sentencing.

The defendant's criminal conduct was unquestionably serious. The defendant and his co-conspirators took advantage of a global pandemic—a time of tremendous suffering—to profit through an elaborate criminal scheme. The defendant and his co-conspirators used cryptocurrency to unlawfully purchase the PII of real victims on encrypted applications like Telegram, and then used that information to fraudulently apply for unemployment benefits from NYSDOL. In total, the defendant and his co-conspirators submitted fraudulent claims in the names of approximately 250 real victims, for which they received in excess of $1,750,000. The defendant closely coordinated with his co-defendants, sharing tips on where to obtain victim PII, traveling to ATM machines together to make cash withdrawals, and discussing other fraudulent schemes in which they could engage. In total, the defendant personally submitted or caused to be submitted claims in the names of at least 23 victims, for which in excess of $178,000 in funds were paid. The defendant flagrantly flaunted his ill-gotten gains on social media, fanning out large wads of cash while wearing designer clothing and posing by sports cars. Given the seriousness of the conduct, a meaningful term of incarceration is warranted to promote respect for the law and to provide just punishment.

Additionally, the defendant's conduct while on supervised release demonstrates that the requested sentence is required for specific deterrence. The defendant repeatedly flouted his conditions of release, traveling without authorization and using marijuana. Most troublingly,

6

the defendant was arrested in a car with three others, in which two loaded firearms were recovered.

The requested sentence is also necessary for general deterrence. The defendant and his co-conspirators capitalized on programs designed to help people suffering through the throes of a crippling global pandemic. The defendant and his co-conspirators stole almost $2 million that had been earmarked for people in need—like those who lost their jobs due to the nationwide shuttering of businesses, or who had unique health concerns that prevented them from working in public. As the photographs attached above demonstrate, plainly the defendant was not one of those people, using the money he stole to instead indulge in a lavish lifestyle. Because of the defendant's actions, it will be harder to enact programs like this in the future, thereby contributing to the suffering of those reliant on these programs.

Financial crimes of the type the defendant committed are also very difficult to detect and investigate. Here, for example, the defendant and his co-conspirators used encrypted messaging applications and cryptocurrency, making their activity much harder to track. Accordingly, the requested sentence is necessary for general deterrence, to ensure similarly situated individuals do not repeat the defendant's crimes.

While the government is mindful of the defendant's youthful age at the time he committed the instant offense, as discussed above, a balance of the Section 3553(a) factors nonetheless weighs in favor of a Guidelines sentence.

V.  Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 41 to 51 months' imprisonment is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  _____/s/_____
Tara McGrath
Assistant U.S. Attorney
(718) 254-6454

cc:  Clerk of the Court (WFK) (by ECF)
     David Colgan, Esq. (by ECF)
     Roberta Houlton, U.S. Probation (by email)