```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,               :
                                        :
            v.                          :    MEMORANDUM & ORDER
                                        :    21-CR-411 (WFK)
GIANNI STEWART,                         :
                                        :
                    Defendant.          :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 24, 2023, Gianni Stewart ("Defendant") pled guilty to Count One of an Indictment charging him with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2). The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 24 months of incarceration, to be followed by one year of supervised release with both standard conditions and special conditions, restitution in the amount of $178,800.00 as set forth in the Order of Restitution, forfeiture in the amount of $178,800.00 as set forth in the Order of Forfeiture, and a $100.00 mandatory special assessment.

## BACKGROUND

The instant offense was uncovered through a joint investigation by the United States Postal Inspection Service and the Department of Labor, Office of Inspector General into fraudulent unemployment benefits claims submitted to the New York State Department of Labor ("NYSDOL"). Presentence Investigation Report ("PSR") ¶ 6, ECF No. 185.

In March 2020, the President of the United States signed into law various acts for the purpose of providing financial assistance to individuals affected by the onset of the COVID-19 pandemic. *Id.* ¶¶ 8-12. Included among these were the Families First Coronavirus Response Act, which provided flexibility for state unemployment insurance ("UI") agencies and administrative funding to respond to COVID-19; and the Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act), which expanded the ability of states to provide UI for workers affected by COVID-19. *Id.* ¶¶ 9-10. The CARES Act also created new UI programs, including the Pandemic

1

Unemployment Assistance program and the Federal Pandemic Unemployment Compensation program. *Id.* ¶ 10. As the pandemic raged on, the President continued to authorize additional funding to alleviate Americans' pandemic-related financial hardship. *See id.* ¶¶ 13-14.

The NYSDOL operates New York's unemployment system and distributes UI benefits. *Id.* ¶ 7. It does so primarily through the New York State Unemployment Insurance Fund ("NYSUIF"). *Id.* During the period covering the instant offense, the two primary methods for filing for NYSUIF benefits were (1) online through the NYSDOL website and (2) by telephone through a NYSDOL call center. *Id.* ¶ 15. Individuals obtained their NYSUIF benefits in a number of ways. *Id.* ¶ 16. Some claimants were issued KeyBank National Association ("KeyBank") debit cards to which NYSUIF benefits were credited. *Id.* Other claimants acquired reloadable cards issued by different banks and, after inputting their reloadable cards' information to the NYSDOL online portal, had those cards funded with NYSUIF benefits. *Id.* Other claimants had NYSDOL deposit their NYSUIF benefits directly into personal bank accounts. *Id.*

Between June 2020 and April 2021, Defendant and his co-conspirators submitted and caused to be submitted approximately 250 fraudulent UI claims to NYSDOL using the personal identifying information ("PII") of real individuals ("the victims"). *Id.* ¶¶ 18-19. Defendant and his co-conspirators obtained the victims' PII by, *inter alia*, using Bitcoin to purchase it from individuals via Telegram, an encrypted messaging application. *Id.* ¶ 20; *see also* Government Sentencing Memorandum ("Gov't Mem.") at 6, ECF No. 232. Defendant himself shared a third-party's PII with another co-conspirator in one Telegram chat and asked that co-conspirator if he could purchase further third-party PII. PSR ¶ 21.

Once Defendant and his co-conspirators purchased their victims' PII using cryptocurrency funds and submitted the fraudulent claims, they obtained NYSUIF benefits on KeyBank debit

cards. *Id.* ¶ 22 (explaining three of Defendant's co-defendants had the NYSUIF benefits deposited directly into co-conspirators' bank accounts). Defendant also shared a KeyBank debit card with at least one of his co-conspirators. *Id.* ¶ 24. Defendant and his co-conspirators went to banks to withdraw cash using those KeyBank debit cards; indeed, the PSR details four instances where Defendant, accompanied by co-conspirators, attempted to withdraw money from KeyBank debit cards at various banks. *Id.* at 23. During the timeframe of the instant offense, Defendant and his co-defendants took and posted pictures of themselves with and fanning out large quantities of cash, in designer clothes and accessories, and with luxury cars. *Id.* ¶ 25; *see also* Gov't Mem. at 3.

Altogether, Defendant and his co-conspirators received more than $1,750,000.00 as a result of their fraudulent scheme. *Id.* ¶ 19. However, if NYSDOL had not detected their scheme before issuing additional payments on pending claims, this figure would have been more than $8,900,000.00. *Id.* Defendant himself submitted and caused to be submitted fraudulent claims in the names of at least 23 victims, for which Defendant and/or his co-conspirators yielded approximately $178,800.00. *Id.* ¶ 31.[1]

On May 14, 2021, the Government filed a then-sealed Complaint alleging between June 2020 and April 2021, Defendant and others fraudulently filed federal and state unemployment insurance claims using the PII of third-party victims, and fraudulently received UI benefits funded by COVID-19 pandemic assistance programs. Compl., ECF No. 1.

---

[1] The PSR and Government's Memorandum both discuss Defendant's conduct related to other fraudulent schemes not covered by the instant offense. Defendant was in a group chat with co-conspirators in which one co-conspirator asked how long "Womply," a Paycheck Protection Program loan provider, took to approve claims and where he could obtain bank statements of third parties. *See* PSR ¶ 37; Gov't Mem. at 2 n.2. In response, another co-conspirator responded with the approval time and stated he had forged the required bank statements. *Id.* In a separate group chat, Defendant sent a co-conspirator PII for third-party victims in Georgia, California, and North Carolina and the co-conspirator sent a link to a website for Ohio unemployment claims. PSR ¶ 38; Gov't Mem. at 2 n.2.

3

On August 5, 2021, a grand jury returned a 13-count Indictment charging Defendant with: one count of conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), 1029(a)(5), and (b)(2); one count of access device fraud, in violation of 18 U.S.C. §§ 1029(a)(5) and (c)(1)(A)(ii); and one count of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (b), (c)(4), and (c)(5). ECF No. 70.

On January 24, 2023, Defendant pled guilty to Count One of the Indictment, charging conspiracy to commit access device fraud. As part of his plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a term of imprisonment of 71 months or below. ECF No. 150 ¶ 4.

## Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to

consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### A.  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

#### 1.  Family and Personal Background

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on July 25, 2001 in Brooklyn, New York to Everton Stewart and Denise Kerr. PSR ¶ 70. When Defendant was young, his parents ended their relationship. *Id.* Defendant's mother is aware of the instant offense and remains supportive. *Id.* Defendant's father was deported when Defendant was a child, after which Defendant reported only occasional contact with him. *Id.* ¶ 72. Defendant has three maternal half-siblings, the eldest of whom is aware of Defendant's instant conviction and remains supportive. *Id.* ¶ 71. Defendant reported he has approximately ten paternal half-siblings, none of whom he is close with. *Id.*

Defendant was primarily raised by his mother in a below-average income, three-family home in East Flatbush, Brooklyn. *Id.* ¶ 72. Defendant reported favorably on his childhood, which was free from abuse. *Id.* For much of his childhood, Defendant played football, which held a significant place in his life. *Id.* However, Defendant quit football after one of his coaches "ruined" the game for him with criticism and negativity and, apparently, would not approve of Defendant's transfer to another school where Defendant could play football. *Id.*; Defense Counsel's Sentencing Memorandum ("Def. Mem.") at 5, ECF No. 231. Defense counsel explains that this coach "favored players who were recruited by him . . . and whose fathers were active and helpful." Def. Mem. at 5. Defendant met neither of those criteria. *Id.*

5

Defendant has never been married. *Id.* ¶ 74. At the time of the PSR's writing, Defendant had no children, *id.*, but Defendant's girlfriend has since given birth to Defendant's child, Def. Mem. at 1.

### 2. Educational and Employment History

Defendant graduated from East Brooklyn Community High School in 2021. PSR ¶ 80. Prior to attending East Brooklyn Community High School, defense counsel reports Defendant attended Franklin High School so that he could play football, and had the experiences described above. Def. Mem. at 5.

From March 2022 through July 2023, Defendant worked as a stocker and warehouse worker at an Amazon location in Maryland. *See* PSR ¶ 83; Def. Mem. at 7. In December 2023, Defendant reportedly began working on a temporary basis for Amazon in Maryland, but has since been terminated. *See, e.g.*, ECF Nos. 216, 218; Second Defense Counsel Supplemental Sentencing Submission ("Second Def. Supp. Mem.") at 2 n.1, ECF No. 240. Defendant's only other job was a Summer Youth Employment job as a childcare worker with the City of New York. PSR ¶ 84.

### 3. Prior Convictions

Defendant has no prior convictions. PSR ¶¶ 63-64. Defendant has been arrested twice while on bond for the instant offense, including one arrest where Defendant was with three other individuals in a car wherein the arresting officers discovered two firearms. *See* PSR ¶¶ 5, 67-68; *see also* Gov't Mem. at 6-7 (noting these firearms were loaded). Defense counsel represents that both of these cases were dismissed against Defendant because of his "limited conduct." Def. Mem. at 7.

### 4. Medical and Mental Health

Defendant reported no history of mental or emotional health problems, nor any chronic or serious physical health problems. PSR ¶¶ 77-78.

### 5. Substance Abuse

Defendant reported prior to his arrest for the instant offense, he used marijuana daily. *Id.* ¶ 79. However, he reported he using marijuana due to his bond conditions, and does not believe he needs substance abuse treatment. *Id.*

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* at Section I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Both defense counsel and the Government recognize the seriousness of the instant offense, and the Court agrees with these assessments. *See* Def. Mem. at 11; Gov't Mem. at 6. As the Government put it:

> The defendant and his co-conspirators took advantage of a global pandemic—a time of tremendous suffering—to profit through an elaborate criminal scheme. The defendant and his co-conspirators used cryptocurrency to unlawfully purchase the PII of real victims on encrypted applications like Telegram, and then used that

7

> information to fraudulently apply for unemployment benefits from NYSDOL. In total, the defendant and his co-conspirators submitted fraudulent claims in the names of approximately 250 real victims, for which they received in excess of $1,750,000.

Gov't Mem. at 6. The Court will consider this and the other § 3553(a)(2) factors further in connection with the parties' sentencing recommendations *infra*.

### C.  The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to Count One of the Indictment, charging him with conspiracy to commit access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2).

Defendant faces a statutory maximum term of imprisonment of seven and one-half years and no minimum term of imprisonment. 18 U.S.C. §§ 1029(b)(2) and 1029(c)(1)(A)(ii). Defendant also faces a statutory maximum term of supervised release of three years and no minimum term of supervised release. 18 U.S.C. § 3583(b). If a condition of release is violated, Defendant may be sentenced to a maximum of two years of imprisonment without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Defendant is also eligible for not less than one nor more than five years of probation, and, barring extraordinary circumstances, one of the following must be imposed as a condition of probation: fine, restitution, or community service. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). Defendant faces a maximum statutory fine of $250,000.00. 18 U.S.C. § 3571(b). However, Probation notes Defendant appears unable to pay a fine based on his financial profile and the priority of restitution. PSR ¶ 89.

The Court is also required to impose a mandatory special assessment of $100.00 per count. 18 U.S.C. § 3013. The Court imposes that special assessment of $100.00 now. Restitution in the full amount of each victim's losses as determined by the Court is mandatory in this case pursuant

to 18 U.S.C. §§ 3663A and 3664. Defendant is subject to the terms of the Order of Restitution, obligating him to pay $178,800.00 in restitution. ECF No. 252. In addition, Defendant is subject to the terms of the Order of Forfeiture, which the Court entered on February 26, 2024. ECF No. 230.

### D. The Kind of Sentences and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

Probation asserts the applicable guideline for conspiracy to commit access device fraud in violation of 18 U.S.C. §§ 1029(a)(2), (a)(5), and (b)(2), is U.S.S.G. §2B1.1, which provides a base offense level of six. PSR ¶ 50. Defendant is responsible for a total actual loss amount of more than $1.5 million, resulting in a 16-level increase pursuant to U.S.S.G. §2B1.1(b)(1)(I). First PSR Addendum at 1, ECF No. 246; PSR ¶ 51.

Two levels are added pursuant to U.S.S.G §2B1.1(b)(2)(A) because the offense involved more than 10 victims. PSR ¶ 52. A further two levels are added pursuant to U.S.S.G. §2B1.1(b)(11)(C)(i) because the offense involved the unauthorized transfer or use of identification unlawfully to produce or obtain means of identification. PSR ¶ 53. Two more levels are added under U.S.S.G. §2B1.1(b)(12) because the offense involved conduct described in 18 U.S.C. § 1040, which is fraud in connection with major disaster or emergency benefits. PSR ¶ 54.

Three levels are removed pursuant to U.S.S.G. §3E1.1 to account for Defendant's timely acceptance of responsibility for the offense. PSR ¶¶ 60-61. A further two levels are removed because Defendant is a Zero-Point Offender under the 2023 Amendments to the Sentencing

9

Guidelines. First PSR Addendum at 2. Altogether, Probation calculates Defendant's total adjusted offense level is 23. *Id.*

Defense counsel and the Government largely agree with Probation's calculations. *See* Def. Mem. at 2; Gov't Mem. at 4. However, defense counsel and the Government argue, and the plea agreement reflects, Defendant should receive a further one-level reduction pursuant to U.S.S.G. Policy Statement 5K2.0 because there was a global resolution to the case. Def. Mem. at 2; Gov't Mem. at 4. Altogether, the Government and defense counsel calculate Defendant's total adjusted offense level to be 22. Def. Mem. at 2; Gov't Mem. at 4-5.

Defendant has no prior criminal convictions, which results in a total criminal history score of zero. PSR ¶¶ 63-65. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of zero establishes a criminal history category of I.

According to Probation's calculations, which assume an offense level of 23, the Guidelines imprisonment range is 46 to 57 months of imprisonment. First PSR Addendum at 2. According to calculations by defense counsel and the Government, which assume an offense level of 22, the Guidelines imprisonment range is 41 to 51 months of imprisonment. Def. Mem. at 2; Gov't Mem. at 5.

The parties' sentencing recommendations vary. Probation recommends a below-Guidelines sentence of 14 months of custody; restitution in the amount of $1,788,429.00; one year of supervised release with special conditions; and a $100.00 special assessment. Revised Probation Recommendation at 1, ECF No. 246-1. In recommending this below-Guidelines sentence, Probation emphasizes the following mitigating circumstances: (1) Defendant was only partially responsible for the total loss amount primarily driving the Guidelines range; (2) Defendant's young age at the time of the instant offense; and (3) a federal conviction would have

10

considerable consequences on the otherwise law-abiding Defendant. *Id.* at 3. The PSR further states Defendant's rehabilitation following his arrest, including participating in the Special Options Services ("SOS") program, may be mitigating. PSR ¶ 106. Probation posits these circumstances warrant significant leniency. Revised Probation Recommendation at 3. Finally, recommends Defendant be excused from the mandatory drug testing provisions during supervised release. *Id.* at 2.

Defense counsel recommends a below-Guidelines sentence of time served and three years of supervised release. Def. Mem. at 11. Defense counsel argues if Defendant's Guidelines calculations were predicated on the loss personally attributable to Defendant—who, according to defense counsel, had the "second lowest number of claims" and third lowest dollar amount obtained via those claims out of the co-conspirators—Defendant's total adjusted offense level would be 16. *Id.* at 2-3. Regarding the adjustment for more than ten victims, defense counsel argues "[w]hile the identities of more than ten persons were used" during the course of the offense, "§2B1.1 Application Note 1, Definitions, require the more than 10 victims suffer actual loss to be considered," and "[t]here is no evidence that any of the persons whose identities were used suffered financial loss." *Id.* at 3. Defense counsel posits Defendant's adjusted offense level would be 20 without the two-level adjustment for more than ten victims. Def. Mem. at 3. Moreover, if both variances defense counsel argues for were applied, Defendant's total adjusted offense level would be 14. *Id.*

Defense counsel urges the Court to give Defendant a second chance, arguing Defendant now finally understands the severity of his conduct and "additional incarceration is unnecessary to achieve the sentencing goals including deterring Gianni Stewart from such conduct again." *Id.* at 3, 11; *see also id.* at 8-11. Defense counsel argues Defendant's post-arrest rehabilitation,

11

brought on at least in part by Defendant's two and a half months of incarceration following this Court revoking Defendant's bail and Defendant becoming a father. *Id.* at 1. Defense counsel asserts "22 year old Gianni Stewart is no longer that" teenager who posts on social media showing off cash obtained through fraud. *See* First Defense Counsel Supplemental Sentencing Memorandum ("First Def. Supp. Mem.") at 1, ECF No. 233. Defense counsel further cites Supreme Court precedent recognizing "[o]ffenders on probation are . . . subject to several standard conditions that substantially restrict their liberty," Def. Mem. at 4 (quoting *Gall v. United States*, 552 U.S. 38 (2007)) (internal quotation marks omitted), and maintains Defendant's "time already spent in jail, on home detention, and if I am sufficiently persuasive, on supervision, is not a free ride for crimes committed by an 18 and 19 year old, now 22," *id.* at 8. Ultimately, defense counsel argues "a sentence that incarcerates Mr. Stewart will not promote respect for the law in our community but will be seen as overly harsh and unduly punitive thereby diminishing the respect for the law and our system of justice." *Id.* at 10. Moreover, in defense counsel's second supplemental sentencing submission, defense counsel requests no interest accrue on Defendant's restitution "and that it is not to be collected or due until 90 days after release from prison if your honor requires additional incarceration." Second Def. Supp. Mem. at 1. The Court denied that request during sentencing.

The Court has read and considered the letters written by Defendant and his supporters. Exhibits to Def. Mem., ECF No. 231-1; Exhibits to First Supp. Def. Mem., ECF No. 233-1. The letters from Defendant's mother and girlfriend describe Defendant as a loving father, older brother, son, and partner; Defendant's aunt writes that Defendant is "well loved by all his family members," who were "very disappointed by his actions[]" and will "therefore . . . all come together to ensure he makes better choices[;]" and Defendant's former school counselor

"believe[s] that he has grown and matured as a result of his troubles and . . . still believe[s] in him." *Id.* The Court appreciates what Defendant and his advocates have said on his behalf.

The Government recommends a Guidelines sentence of 41 months to 51 months of imprisonment. The Government emphasizes the seriousness of the instant offense combined with Defendant's "flaunt[ing of] his ill-gotten gains on social media" as warranting incarceration. Gov't Mem. at 6. The Government asserts a Guidelines sentence is necessary to effectuate both specific and general deterrence, specifically invoking Defendant's "repeated[] flout[ing of] his conditions of supervised release," the harms wrought by Defendant and his co-conspirators in taking advantage of Government programs designed to help people during the pandemic, and the difficulty in detecting and investigating these types of financial crimes. *Id.* at 6-7. While the Government acknowledges Defendant's young age at the time of the instant offense, it ultimately concludes that "a balance of the Section 3553(a) factors nonetheless weighs in favor of a Guidelines sentence." *Id.* at 7.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have pointed the Court to the policy statement contained in U.S.S.G. §5K2.0 governing the global resolution reduction. *See* First PSR Addendum at 3; *see also* Gov't Mem. at 4; Def. Mem. at 2. Defense counsel further points the Court to the United States Sentencing Commission's recent proposed amendments to the sentencing Guidelines, which would amend the policy statement at §5H1.1 to specifically permit courts to downwardly depart "due to the defendant's youthfulness at the time of the offense or prior offenses." Third Defense Counsel Supplemental Sentencing Submission, ECF No. 242 (quoting U.S. Sent'g Comm'n, Amendments

13

to the Sentencing Guidelines (Preliminary) Proposed Amendment 2 (Apr. 17, 2024), *available at* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2024) (internal quotation marks omitted). The parties have not pointed the Court to any other pertinent policy statements, and the Court has not found any on its own.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court premises its sentence on the nature and characteristics of Defendant and of the instant crime of conviction. It has carefully considered the purpose of the applicable Guidelines provisions and has adequately ensured the sentence it now imposes will avoid unwarranted sentence disparities.

### G.  The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Pursuant to 18 U.S.C. § 3663A and the Order of Restitution, Defendant is ordered to pay restitution in the total amount of $178,800.00. *See* ECF No. 252.

### CONCLUSION

For the reasons set forth above, the Court determines a sentence of 24 months of incarceration to be followed by one year of supervised release with both the standard conditions and special conditions, restitution in the amount of $178,800.00 as set forth in the Order of Restitution, forfeiture in the amount of $178,800.00 as set forth in the Order of Forfeiture, and a $100.00 mandatory special assessment is consistent with, and is sufficient but no greater than

necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addendum thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 10, 2024
       Brooklyn, New York